2013-1295

───────────────────────────────

# United States Court of Appeals for the Federal Circuit

───────────────────────────────

### ICON INTERNET COMPETENCE NETWORK B.V.,

*Plaintiff-Appellant*,

v.

### TRAVELOCITY.COM LP,

*Defendant-Appellee.*

───────────────────────────────

**Appeal from the United States District Court for the Northern District of Texas in case no. 11-CV-1131, Judge Reed C. O'Connor**

───────────────────────────────

### CORRECTED BRIEF OF DEFENDANT-APPELLEE

───────────────────────────────

*Thomas Melsheimer*
*Neil McNabnay*
*David Conrad*

*John A. Dragseth*                    Fish & Richardson P.C.
Fish & Richardson P.C.                1717 Main Street
3200 RBC Plaza                        Suite 5000
60 South Sixth Street                 Dallas, TX 75201
Minneapolis, MN 55402                 Phone: 214-747-5070
Phone: 612-335-5070

**September 12, 2013**              *Attorneys for Defendant-Appellee*

**Form 9**

FORM 9.  Certificate of Interest

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

ICON Internet Competent Network  v.  Travelocity.com LP

No. 2013-1295

# CERTIFICATE OF INTEREST

Counsel for the (petitioner) (appellant) (respondent) (<u>appellee</u>) (amicus) (name of party)
Travelocity.com LP                    certifies the following (use "None" if applicable; use extra sheets if necessary):

1.      The full name of every party or amicus represented by me is:

Travelocity.com LP

2.      The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

Not Applicable

3.      All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

Sovereign Holdings, Inc.; Sabre Holdings Corporation; Sabre Inc.' Travelocity Holdings, Inc.' Travelocity Holdings I, LLC; and Travelocity.com LLC

4. ☑  The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

See Rider A.

September 18, 2013
_____
Date

_____
Signature of counsel

Thomas M. Melsheimer
_____
Printed name of counsel

Please Note: All questions must be answered
cc: _____

i

**Rider A**
**to**
**<u>Certificate of Interest</u>**

Fish & Richardson P.C.

Thomas M. Melsheimer

John A. Dragseth

Neil J. McNabnay

Andrew R. Graben

David B. Conrad

J. Kristopher Long

Carl E. Bruce

Ricardo J. Bonilla

Emily B. Falconer

Jane J. Du

Kent W. Harris

# TABLE OF CONTENTS

**Page(s)**

**CERTIFICATE OF INTEREST** ..................................................... **i**

**TABLE OF CONTENTS** ............................................................ **iii**

**TABLE OF AUTHORITIES** ........................................................ **v**

**STATEMENT OF RELATED CASES** ........................................... **1**

**STATEMENT OF JURISDICTION** .............................................. **1**

**STATEMENT OF THE ISSUES** .................................................. **1**

**INTRODUCTORY STATEMENT** ................................................ **2**

**STATEMENT OF THE CASE** ..................................................... **3**

**STATEMENT OF THE FACTS** ................................................... **4**

    **A.**    **The ICON '853 Patent—Virtual Reality-Like Yellow Pages That Permit Viewing Multiple "Storefronts" Arranged as at Least Part of a Virtual "Commercial Area"** ............................................................... **4**

    **B.**    **The Travelocity System—Mere Individual Photos of Hotels, with no Arrangement into a Commercial Area** .... **9**

**SUMMARY OF THE ARGUMENT** ........................................... **16**

**ARGUMENT** ......................................................................... **18**

    **A.**    **Standard of Review** ........................................................ **18**

    **B.**    **ICON Fails to Address the Claim Requirement that the Graphics Items That Show Storefronts are the Graphics**

# TABLE OF CONTENTS

**Page(s)**

**Items that Provide an Appearance of a Commercial Area ........................................................................ 19**

**1.    The Claim Clause Addressed by the District Court Requires That the Storefront Graphic Items Be a Subset of the Commercial Area Graphics Items......... 19**

**2.    ICON has Waived its Objection to this Claim Construction by Not Addressing it in the Appeal....... 22**

**C.    ICON Raises no Relevant Fact Disputes. ......................... 24**

**D.    The Claim Construction Issues That ICON Raises Do Not Change the Result in This Appeal ..................................... 30**

**1.    A "Screen Display" Must be Tied to What Will be Shown Visually on a User's Display ............................. 30**

**2.    The Commercial Area Must be Part of a Scene Because the Claims Call for "Providing the Appearance of at Least Part of a Commercial Area" and "At Least Some of the Graphics Items Having the Appearance of Storefronts" ................................................................. 34**

**3.    "The Screen Display Being Navigable" Requires Generating a Visible Display........................................ 35**

**CONCLUSION ............................................................................ 37**

# TABLE OF AUTHORITIES

## CASES

*Advanced Magnetic Closures, Inc. v. Rome Fastener Corp.*,
    607 F.3d 817 ............................................................................................24

*Applied Companies v. U.S.*,
    144 F.3d 1470 (Fed. Cir. 1998) ..........................................................25

*Athletic Alternatives, Inc. v. Prince Mfg., Inc.*,
    73 F.3d 1573 (Fed. Cir. 1996) ............................................................29

*Barmag Barmer Maschinenfabrik AG. V. Murata Machinery, Ltd.*,
    731 F.2d 831 (Fed. Cir. 1984) ............................................................25

*Bell Atlantic Network Servs., Inc. v. Covad Comm. Group, Inc.*,
    262 F.3d 1258 (Fed. Cir. 2001) ....................................................30, 31

*Biotec Biologische Naturverpackungen GmbH & Co. KG v. Biocorp, Inc.*,
    249 F.3d 1341 (Fed. Cir. 2001) ..........................................................25

*Boss Industries, Inc. v. Yamaha Motor Corp. U.S.A.*,
    333 F.Appx'x 531 (Fed. Cir. 2009) ....................................................33

*Cyber Corp. v. FAS Techs., Inc.*,
    138 F.3d 1448 (Fed. Cir. 1998) ..........................................................18

*Gen. Mills, Inc. v. Hunt-Wesson, Inc.*,
    103 F.3d 978 (Fed. Cir. 1997) ............................................................18

*Hynix Semiconductor Inc. v. Rambus Inc.*,
    645 F.3d 1336 (Fed. Cir. 2011) ..........................................................23

v

# TABLE OF AUTHORITIES

*Kao Corp. v. Unilever U.S., Inc.*,
   441 F.3d 963 (Fed. Cir. 2006) ............................................................... 23

*MyMail, Ltd. v. America Online, Inc.*,
   476 F.3d 1372 (Fed. Cir. 2007) ................................................... 18, 24

*Thorner v. Sony Comp. Entertainment Amer., LLC*,
   669 F.3d 1362 (Fed. Cir. 2012) ......................................................... 30

*Trading Techs. Intern., Inc. v. eSpeed, Inc.*,
   595 F.3d 1340 (Fed. Cir. 2010) ......................................................... 18

*Uniloc USA, Inc. v. Microsoft Corp.*,
   632 F.3d 1292 (Fed. Cir. 2011) ......................................................... 24

*Vitronics Corp. v. Conceptronic, Inc.*,
   90 F.3d 1576 (Fed. Cir. 1996) .................................................... 32, 33

## OTHER AUTHORITIES

1994 McGraw-Hill Dictionary of Scientific and Technical
   Terms ......................................................................................................... 31

Federal Rule of Civil Procedure 56(c) ................................................... 18

## STATEMENT OF RELATED CASES

ICON's statement of related cases is accurate.

## STATEMENT OF JURISDICTION

ICON's statement of jurisdiction is accurate.

## STATEMENT OF THE ISSUES

ICON's statement of the issues is incomplete. The issues, when fully stated, are:

1.    Did the district court err in construing a limitation that required "graphics items arranged to provide the appearance of at least part of a commercial area, at least some of the graphics items having the appearance of storefronts" to require that "the graphic items" for the storefronts be part of the graphics items that make up the commercial area?

2.    Did the district court err in granting summary judgment of noninfringement where the Travelocity system does not display pictures of storefronts in an area that appears like a commercial area?

**INTRODUCTORY STATEMENT**

This is a patent case in which Travelocity's noninfringement can be resolved from the face of the claims themselves and is simply reinforced by the remainder of the intrinsic and extrinsic evidence. The asserted patent focuses on providing computer users with a virtual reality-like shopping experience that places them right in a simulated commercial district made up of photographs of storefronts.

The patent claims express this immersive concept by reciting "graphics items" that both provide the appearance of a commercial area and have the appearance of storefronts. Travelocity has no such dual-purpose graphics items. Rather, it simply shows pins on a map (which supposedly shows the claimed commercial area), but those pins do not show storefronts. Travelocity shows hotel photos in wholly separate pop-up windows, but those photos do not show multiple venues arranged in a commercial area. This distinction was the basis on which the district court granted summary judgment of noninfringement, yet one can search and search ICON's opening brief for argument addressing the point. ICON instead pulls the claim apart into small pieces, causing ICON's blue brief to fail in addressing what is claimed and in addressing the basis on which the district court ruled. This Court should affirm because ICON has waived its challenge to the district court's ruling, and because ICON's substantive arguments ignore the connections required in the claims.

2

## STATEMENT OF THE CASE

This is a patent appeal in which ICON sued Travelocity on May 27, 2011. ICON asserted claims 1-7, 10, and 11 of its '853 patent,[1] which focuses on the idea of providing a virtual reality-like Yellow Pages service. Specifically, ICON envisioned a system by which photographs of storefronts would be captured and used to generate a virtual, walk-through shopping area with buildings assembled from multiple of the photographs of business that match a user's query on a particular topic (e.g., a virtual shopping area made up of camera shop buildings could be returned to a query of "photography"). After the claims were construed in a May 1, 2012, *Markman* order [A516-43], Travelocity moved for summary judgment of noninfringement on July 23, 2012, in light of the Court's constructions. While that motion remained pending, Travelocity filed a Second Motion for Summary Judgment of Non-Infringement on December 17, 2012, after expert discovery closed. Travelocity noted that the claims required graphic images that represent a commercial area, at least some of which show storefronts, and the Travelocity system wholly lacked such a feature.

In a February 22 Order, the district court granted the second motion for summary judgment. [A2-22] The court reasoned that Travelocity's system, which

---

[1] U.S. Patent 6,002,853. ICON asserted claims 1-7 and 9-11 before the Markman proceeding and then dropped claim 9 by August 27, 2012, when it served its initial infringement expert report. [A2870]

3

simply showed an interactive map in one window that displayed marker pins (but not photos of business storefronts), and displayed a separate pop-up overlay window with photos from the selected hotel in response to a user mouse click, did not meet the claim requirement for a "screen display" with "graphics items [some of which having the appearance of storefronts] arranged to provide the appearance of at least part of a commercial area." The court denied Travelocity's initial summary judgment motion as moot. [A22] ICON filed its Notice of Appeal on March 22, 2012.

## STATEMENT OF THE FACTS

A.    **The ICON '853 Patent—Virtual Reality-Like Yellow Pages That Permit Viewing Multiple "Storefronts" Arranged as at Least Part of a Virtual "Commercial Area"**

ICON's '853 patent—issued from an application initially titled "Yellow Pages in Cyberspace"—is centered on the idea of providing a virtual reality-like Yellow Pages for Internet users. [A73] At its start, the patent admits that there already was at the time "a push to make the information normally contained in Yellow Pages available in electronic media," and that "[s]ome electronic databases including Yellow Pages information are now appearing on the Internet." [A58 (1:56-58 & 2:13-14); *see also* A59 (3:49-51)] The patent also contains extensive generic discussion about existing technologies such as the Internet, the World Wide Web, and various related protocols for interfacing web sites with searchable

4

databases. The patent purports to build upon the existing Yellow Pages and Internet prior art by making electronic business directories on the Internet more "visually stimulating." [A59 (3:67)] To that end, the patent describes the invention as a system that responds to a user query by generating a virtual reality scene created to look like a shopping area using images of business storefronts that match the search:

> The invention provides a system comprising a server . . . having virtual reality means for generating a virtual reality scene, the virtual reality scene varying depending on the results of the search.

[A59 (4:24-31); *see also* A59 (4:32-47) (reciting the same feature as being part of "[a]nother aspect of the invention")].

In one embodiment, the inventor conceived of taking street-level photographs of a large number of businesses, and then presenting them using an "elevator" metaphor (presumably to recreate the feel of an old department store). [A61 (8:9-13)] In the system, a user would enter a query next to the elevator door, and the results would be shown as a scene of storefronts out of the door when it opened. [A55] To that end, FIG. 4A shows a view from above indicating how a real-world camera can capture images of storefronts for use in later generating a virtual representation of the stores:



[A54] FIG. 6—the patent's cover figure—shows a display of the virtual elevator, with search boxes to the left, and (through the open elevator door) a virtual representation of storefronts in a recreated commercial area that is responsive to the search:



[A55] Thus, as noted above, the Summary of the Invention opens:

> ***The invention provides a system comprising*** a server having a memory, and a database defined in the memory; and a client in communication with the server; the server communicating to the client an interface for use in requesting a search of the database, and the server having ***virtual reality means for generating a virtual reality scene, the virtual reality scene varying depending on the***

6

***results of the search***.

[A59 (4:24-31) (emphasis added)]

Most of the patent Background describes known Internet terminology, and most of the Detailed Description (up to Column 8) is little more than known computer, networking, and database technology (UNIX, CD ROMs, lists of computer brands, TCP/IP, image formats such as GIF, HTML, VRML, various file types, LAN/WAN, and database interfaces such as WAIS, PERL, SQL). The disclosure of what the inventors purported to add to this preexisting computing universe begins at column 8, in association with describing the flowchart of FIG. 3 (right). [A53] There, a user enters a query in response to the presentation of a user interface (e.g., search boxes next to a door of a virtual elevator)— boxes 56-60. A server generates and sends to the user's computer a "virtual reality space" that includes graphics selected to be responsive to the search (e.g., as storefront images)—boxes 62-66. The user's web browser launches a separate



"virtual reality viewer" to display this generated virtual reality space. [A60 (5:24-25)] As part of the presentation to the user, an animation may suggest that the elevator is climbing floors until it reaches the category on which the user searched. [A61 (8:31-44)] The doors of the elevator may then open, as shown in FIG. 6 above, and the storefronts may be presented adjacent to each other within a commercial area, and the user may click on any particular storefront to be taken to a web page for the corresponding store. [A62 (9:7-13)] The patent notes that "the appearance of the street presented will vary based on the results of the database search," but the patent provides no indication that its inventor was the originator of any concept broader than presenting a virtual reality-like scene of storefronts, like that shown in FIG. 6.

Claim 1 of the patent reflects this approach, starting with general computing language, and ending with the requirement, similar to the depictions of a virtual walk-through scene, that a screen display show multiple storefronts for a business category as a virtual commercial area that is navigable to reveal more:

1. A server configured to communicate with a client that selectively connects to the server, the server comprising:

a memory, and a database defined in the memory, the database including data about businesses, which data includes at least the names of respective businesses and categories in which respective businesses are classified;

communication hardware providing for communication between the server and the client;

the server communicating to the client an interface for use in requesting a search of the database in response to a client connecting to the server, the server, in response to a search request made using the interface, searching the database and ***generating a screen display for the client***, the screen display varying depending on the results of the search and ***including <u>graphics items arranged to provide the appearance of at least part of a commercial area, at least some of</u> <u>the graphics items</u> <u>having the appearance of storefronts</u>***, respective graphics items being associated with respective businesses, ***multiple storefronts of the screen display being associated with businesses of the same category depending on the search request***, the screen display being navigable to reveal graphics items adjacent those that are displayed, the selection of individual graphics items for inclusion in the screen display varying depending on the results of the search.

[A62 (10:23-48) (emphases added)] Importantly, the emphasized language requires that the screen display show graphics items that both (a) are arranged to appear like a commercial area, and (b) appear as multiple different storefronts.

## B.    The Travelocity System—Mere Individual Photos of Hotels, with no Arrangement into a Commercial Area

Travelocity and its parent, Sabre Holdings Corporation, have been offering electronic reservations systems for flights and hotels for over 30 years. In the late 1980s and early 1990s, Sabre led a push to digitize hotel directories, which travel

agents had previously consulted in paper form when making reservations on the Sabre system. Sabre's system provided hotel directories searchable over a network, complete with digital photographs and maps of the hotels. Sabre converted the product into a consumer service in 1995 to form Travelocity, a travel web site (www.travelocity.com) that allows consumers to search for and book airline tickets, hotel rooms, rental cars, cruises, and vacation packages through the Internet.

While Travelocity uses all sorts of technologies and business relationships to give its users great selections at great prices, its presentation of hotel images is pretty standard. A user enters search parameters (e.g., location and dates of travel) on the following interface, which is a flat page, and not any sort of virtual space:



[A2885]

The Travelocity system returns results according to three different "views" that a user can select via corresponding tabs—"List View," "Map View," and "Top Secret Hotels."   [A385] List view is the default, and merely shows a list of matching hotels and an accompanying image (including images of hotel exteriors), related advertisements, and various search criteria. [A385] A user can then select Map View to show a new page that adds to the top of the list a map of the geographic area of the search (e.g., the user's travel destination), as shown below:



[A2893] As can be seen, the map at the top is a separate part of the page from the images at the bottom, and both are in flat views without any virtual reality-like features, such that the images are not part of any "commercial area" whose appearance is provided on the display. Rather, as ICON's expert Dr. Ahmed Tewfik confirmed in deposition, the alleged "storefronts" displayed on this web

12

page are beneath, and visually separate from, the alleged "commercial area" of the map. [A320]

If a user selects one of the pins on the map, a pop-up window appears in the map area and contains an image of the hotel for the selected pin, the hotel's Travelocity rating, and the hotel's average nightly rate, along with buttons that let a user view more details about the hotel or proceed to the booking process. The pop-up windows that appear are overlaid on the map:



[A899] To view these pop-up windows, the user is required to click on the pins—

the pop-up windows do not automatically appear when the web page is first rendered. And none of the images on Travelocity's web site contain or comprise any virtual reality-like features: all of them are flat views of text, maps, hotel exteriors, and hotel interiors.

## C.    The District Court Proceedings

The district court proceedings were marked largely by Travelocity repeatedly pointing out the connection in the '853 patent claims between the need for the "graphics items" to provide the appearance of a commercial area, and at least some of those commercial-area-graphics items having the appearance of storefronts—and by ICON's efforts to avoid this requirement that is specific in the claims. For example, during claim construction, Travelocity proposed that the following claim limitation be construed to require graphics items arranged into a scene, and some of those items resembling front exteriors of businesses:[2]

> graphics items arranged to provide the appearance of at least part of a commercial area, at least some of the graphics items having the appearance of storefronts.

[A528] Travelocity emphasized that the two clauses in this limitation were connected, so that the same graphics items that had the appearance of storefronts were the graphics items shown in the commercial area after the search. [A530-32]

---

[2] Travelocity also sought to construe "storefront" as the side of a store facing the street, but the district court rejected this position, and it is not relevant to the present appeal.

ICON argued that the screen display merely needs to include "graphics items arranged to provide the depiction of at least part of a commercial area and to include depictions of storefronts," a construction that erased from the claim the requirement that the graphics that form the appearance of the commercial area *also* have the appearance of multiple storefronts. [A1579] In its *Markman* reply, ICON tried to define certain terms within this phrase, but never addressed Travelocity's overriding argument about the required connection between the two clauses—i.e., that the same items that provided the appearance of the commercial area had to be the items that depicted the storefronts. [A1871-74] The district court found Travelocity's argument on this point "to be consistent with the claim language." [A533]

Travelocity then moved for summary judgment of noninfringement—both before and after expert discovery closed. [A1978-97] The second motion is the subject of this appeal and, in it, Travelocity argued that its system displayed storefronts below and separate from the map-based display that ICON identified as the "commercial area," and thus lacked the limitation of "graphics items arranged to provide the appearance of at least part of a commercial area, at least some of the graphics items having the appearance of storefronts."[3]   [A309-25] The district

---

[3] The first motion, which the district court ruled moot, centered on the claim limitation requiring different categories of storefronts for different search terms, and Travelocity's display of storefronts only for hotels. [A1981; *see* A22]

court construed this claim language to mean "images arranged into a scene resembling an area having businesses, at least some of the images having the look of the front exterior of a business." [A533] In explaining its decision regarding this construction, the district court emphasized "that the claim language . . . makes clear that the storefronts are a subset of the commercial area." [A533]

ICON's response focused, not on what Travelocity's code actually displayed, but on actions of Travelocity's servers to select and arrange images of the storefronts and commercial area before such display. [A831-34; 816-839] The district court, however, noted that "the language of the patent claims focuses on what is included on the screen display," not what is done with the code separate from the display. [A15] And Travelocity's screen display did not show storefronts that were a subset of the commercial area, as required by the court's construction. [A15] The district court also noted that even if ICON's argument about the underlying code was correct, neither it nor its expert, Dr. Tewfik, had "analyze[d] the provided code or explain[ed] in detail where the disputed claim limitation [could] be found in the code." [A16] Therefore, no genuine issues of material fact existed, and the district court granted Travelocity's motion.

This appeal followed.

## SUMMARY OF THE ARGUMENT

This case properly centers on the claim requirement that the same graphics

items that create the appearance of a commercial area also have to show the storefronts—a point that ICON wholly neglects in its opening brief. The plain claim language requires such a connection by reciting that "the graphics items" that have the "appearance of storefronts" are the "graphics items arranged to provide the appearance of at least part of a commercial area." That is also what the inventors said they had invented in the specification, it is a logical description of how to describe generating a virtual reality-like scene out of pictures of storefronts, and it is the basis on which the district court properly granted summary judgment because the Travelocity storefront images are different and separate graphics items than the graphics items in the form of pins on a map that show a commercial area.

ICON's blue brief focuses instead on isolated claim terms without dealing with the required connection in the broader clause. ICON argues that the district court erred in construing "screen display" to mean "screen visible on the client," even though the ordinary meaning of the word "display" suggests something that is visible. ICON next argues that the court erred in construing "graphics items arranged to provide the appearance of at least part of a commercial area," but ignores the clause, "at least some of the graphics items having the appearance of storefronts." Reading all the claim terms together, as ICON refuses to do, illustrates that the graphics items that comprise a commercial area must include graphics items that have the appearance of storefronts of businesses that match the

17

search. Finally, ICON argues that the district court misconstrued "screen display being navigable to reveal graphics items adjacent those that are displayed," relying once again on its argument that the screen display need not be visible, an argument that is not supported by the term's plain and ordinary meaning or the patent's specification.

## ARGUMENT

### A.    Standard of Review

Summary judgment is proper if the moving party demonstrates that there is no genuine dispute of material fact, and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Gen. Mills, Inc. v. Hunt-Wesson, Inc.*, 103 F.3d 978, 980 (Fed. Cir. 1997). Claim construction is a legal matter. *Trading Techs. Intern., Inc. v. eSpeed, Inc.*, 595 F.3d 1340, 1351 (Fed. Cir. 2010) (citing *Cyber Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1454 (Fed. Cir. 1998)). "Where the parties do not dispute any relevant facts regarding the accused product . . . but disagree over possible claim interpretations, the question of literal infringement collapses into claim construction and is amenable to summary judgment." *Gen. Mills*, 103 F.3d at 983; *MyMail, Ltd. v. America Online, Inc.*, 476 F.3d 1372, 1378 (Fed. Cir. 2007).

**B.    ICON Fails to Address the Claim Requirement that the Graphics Items That Show Storefronts are the Graphics Items that Provide an Appearance of a Commercial Area.**

**1.    The Claim Clause Addressed by the District Court Requires That the Storefront Graphic Items Be a Subset of the Commercial Area Graphics Items.**

Travelocity's summary judgment motion and the district court's summary judgment ruling focused on the complete claim limitation of:

> graphics items arranged to provide the appearance of at least part of a commercial area, at least some of the graphics items having the appearance of storefronts . . . .

[A11 (district court decision citing Travelocity brief)] From this, the court concluded:

> [I]t is consistent with the claim language to require that the storefront images be a subset of the commercial area. In other words, some of the "images arranged into a scene resembling an area having businesses" must be "images having the look of the front exterior of a business."

[A14 (internal citations omitted)] Because Travelocity's pop-up windows (which were accused of showing storefront images) are not a sub-set of the map (which was accused of being the displayed "commercial area"), but are instead overlaid on top of the map, the district court reasoned that there could be no infringement. [A14-16][4]

---

[4] The court reasoned that there could be no doctrine of equivalents infringement because ICON presented mere "boilerplate language," and no limitation-by-limitation analysis, and did not "explain the insubstantiality of the differences

19

Such a conclusion is fully supported by every piece of intrinsic evidence. First, the plain claim language requires a "screen display . . . including graphics items." By the passage of the claim quoted above, those same graphics items must do two different things: (1) be "arranged to provide the appearance of at least part of a commercial area"; and (2) at least some "having the appearance of storefronts." Travelocity generates no code that creates a display with any graphics items that do both of these things. Rather, the pins on the Travelocity map cannot be such graphics items because they do not show any storefronts, and the wholly separate pop-up windows cannot be the graphics items because they are separate elements from the map. The '853 Patent's claims explicitly require this dual role from a graphics item, and Travelocity does not have items that play such a dual role.

The patent specification makes even clearer that Travelocity's system cannot infringe. Specifically, the patent has a singular drum-beat relating to provision of a virtual reality-like experience for a shopper, and a central part of that experience is showing a user storefront images arranged to mimic a commercial area. All of the screen shots at Figures 5-10 show such a display, with Figure 6 being exemplary, and showing storefronts on each side of a street out the open door of a virtual elevator:

between the patented system and the accused system, or discuss the function, way, result test." [A20]



[A55] The written portion of the specification further supports this singular view of the invention. For example, the Summary of the Invention opens:

> ***The invention provides a system comprising*** a server having a memory, and a database defined in the memory; and a client in communication with the server; the server communicating to the client an interface for use in requesting a search of the database, and the server having ***virtual reality means for generating a virtual reality scene, the virtual reality scene varying depending on the results of the search***.

[A59 (4:24-31) (emphasis added)] The only other "aspect of the invention" identified in the Summary involves a "server generating a virtual reality scene" that varies based on the results of a search entered by a user. The rest of the detailed description is largely a recitation of generic computer and web technologies (e.g., HTML, VRML, etc.). And the remainder of the written description discusses presentations that only have a virtual reality character to them—that show images of storefronts arranged adjacent each other to provide a user with the feel of an actual physical location for the search result. [E.g., A61-62]

21

ICON presents no credible explanation that the patent discloses anything more. It points to isolated descriptions of the generic web technologies like HTML and web browsers, implying that the patent should cover all uses of those technologies. [E.g., Blue Br. at 3 and 17-18] But any fair reading of the specification shows that ICON did not invent, and did not claim to invent, such prior art technologies. Rather, discussion of those technologies is merely in support of the much more specific virtual reality-related invention that ICON claimed to have made.[5]

At bottom, the two inter-related clauses in the claims require graphics items that both provide the appearance of a commercial area and appear as storefronts, and the written description identifies such an approach as part of the "invention" and has no other form of presentation for search results.

### 2.    ICON has Waived its Objection to this Claim Construction by Not Addressing it in the Appeal.

Faced with such a one-sided situation in the '853 Patent regarding the dual requirements for graphics items, ICON chooses to ignore the requirements. While

---

[5] Even attempts in the patent to broaden the disclosure do not support ICON's position. For example, ICON points to a passage that notes that "virtual reality . . . is not necessarily meant to describe the type of virtual reality that involves the use of gloves and helmets or goggles, but instead is used to describe the type of virtual reality that permits navigation through a scene, or manipulation of objects, using a mouse and keyboard." [Blue Br. at 18 (citing A60 (5:25-35)] This passage simply indicates that the types of input/output mechanisms are not limited to those seen in expensive virtual reality systems, but does not remove the claimed invention from the category of a virtual reality-like system.

both Travelocity and the district court presented the noninfringement issue as being tied to the requirement that the graphic items both (1) present the appearance of a commercial area, and (2) have the appearance of storefronts, ICON never takes on that dual requirement in its blue brief. Rather, it tries to bind this Court into discussions of isolated claim terms like "screen display," "commercial area," and "navigable."  [Blue Br. at 12-26] As a result, it never comes to grips with the ultimate underlying determination by which the district court granted summary judgment of noninfringement.

This is a classic case of waiver. As the Court has repeatedly recognized, failure to raise an issue (including a claim construction issue) plainly in an opening brief waives the appellant's right to challenge such an issue. *See, e.g., Kao Corp. v. Unilever U.S., Inc.*, 441 F.3d 963, 973 n.4 (Fed. Cir. 2006) (refusing to address claim construction issue that appellant referenced only in passing in its opening brief); *Hynix Semiconductor Inc. v. Rambus Inc.*, 645 F.3d 1336, 1354 (Fed. Cir. 2011) ("To the extent Rambus relies on other arguments in its reply brief, those arguments are waived as not presented in its opening brief. This court therefore affirms the district court's claim construction of the 'second external clock' limitation."); *see also Advanced Magnetic Closures, Inc. v. Rome Fastener Corp.*, 607 F.3d 817, 833 ("This court has consistently held that a party waives an argument not raised in its opening brief.").

Thus, not only was the district court plainly right in its claim construction on the dual requirement for graphics items and its subsequent grant of summary judgment on that basis, but also ICON has failed to address that ground for the summary judgment and cannot address it for the first time in reply.

## C.    ICON Raises no Relevant Fact Disputes.

What ICON attempts to do, rather than address the central basis for the finding of noninfringement, is suggest that there were fact disputes that prevented entry of summary judgment. [*See* Blue Br. at 37-34] But ICON has not raised any genuine issues of material fact. Importantly, ICON does not dispute how Travelocity's web site works or what is displayed on the web site and when; rather, the parties dispute whether these facts amount to infringement of the claims as properly construed. Such a disagreement with the proper construction of claim terms raises a question of law for the Court to resolve, not a question of material fact sufficient to defeat summary judgment. *See MyMail*, 476 F.3d at 1378.[6]

---

[6] ICON's opening brief cites *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292 (Fed. Cir. 2011) [Blue Br. at 28-19], but that decision says that there may be a fact issue when the parties agree on the claim construction but disagree on how the accused product operates so that there is a disagreement about how to read the claims onto that product. Here, the operation of Travelocity's system is not disputed for purposes of the summary judgment motions—i.e., the parties rely on the same images of the system operation, and although ICON talks on-and-on about the code on the servers, the district court properly found that it did not present relevant evidence on the code, nor does it cogently explain how that code changes the result here, since it is the code that produced the images both parties have shown the Court.

ICON and its expert Dr. Tewfik attempt to manufacture an issue of material fact by claiming that infringement of the asserted claims occurs, not by what is displayed on Travelocity's website, but instead by the underlying code that results in the display. [*See, e.g.,* Blue Br. at 32-33] Under any interpretation of the claims, however, neither ICON nor its expert points to any factual evidence or substantiated expert opinion regarding Travelocity's underlying code showing that accused system operates in a manner that infringes.

The district court addressed this deficiency head on, and correctly concluded that the evidence ICON submitted—Dr. Tewfik's expert opinions in his deposition and declarations, and Travelocity's underlying web page code—did not properly address the issue of infringement. In a two-page discussion, the court explained: "Dr. Tewfik never specifically analyzes the provided code or explains in detail where the disputed claim limitation can be found in the code." [A16-17] The district court correctly held that this conclusory evidence was insufficient to create a genuine issue of material fact. "It is well settled that 'a conclusory statement on the ultimate issue does not create a genuine issue of fact." *Applied Companies v. U.S.*, 144 F.3d 1470, 1475 (Fed. Cir. 1998); *Biotec Biologische Naturverpackungen GmbH & Co. KG v. Biocorp, Inc.*, 249 F.3d 1341, 1353 (Fed. Cir. 2001); *Barmag Barmer Maschinenfabrik AG. V. Murata Machinery, Ltd.*, 731 F.2d 831, 836 (Fed. Cir. 1984) (holding "[m]ere denials or conclusory statements

25

are insufficient" to defeat summary judgment).

The conclusory nature of Dr. Tewfik's opinions is seen in numerous faulty analyses throughout his deposition testimony, declaration, and expert report. For example, rather than applying the claims as construed in their entirety, Dr. Tewfik insisted on breaking up the court's constructions and applying them piecemeal to Travelocity's accused system. The most relevant claim term is that discussed above—which leads to the requirement that the "images having the look of the front exterior of a business" must be among the "images arranged into a scene." [*See* A204] But Dr. Tewfik does not apply the entire construction. His expert report instead broke up the claim elements in a manner neither the parties nor the court had addressed before:

> ***The next element of claim 1 recites: "including graphics items arranged to provide the appearance of at least part of a commercial area,".*** It is my understanding that the Court has construed the phrase "graphics items arranged to provide the appearance of at least part of a commercial area" as meaning "images arrange into a scene resembling an area having businesses". . . . ***The next element of claim 1 recites: "at least some of the graphics items having the appearance of storefronts, respective graphics being associated with respective businesses,".*** It is my understanding that the Court has construed the first portion of this element "at least some of the graphics items having the appearance of storefronts" as meaning "at least some of the images having the look of the front exterior of a business".

[A2895-96] Breaking up the claim elements in this manner resulted in Dr. Tewfik ignoring the requirement that the "images arranged into a scene" included the "images having the look of the front exterior of a business."

Dr. Tewfik again divided the relevant claim term into two parts in his declaration that supported ICON's summary judgment response:

> The generation by Travelocity's servers of a screen display containing information or code representing "images arranged into a scene resembling an area having businesses," including images having the look of the front exterior of a business," meets . . . the limitations of claims 1, 10 and 11 . . . .

[A900] By applying the construction in two parts to Travelocity's accused website, rather than as the single entire construction, Dr. Tewfik read out of the claim limitation the requirement that the images comprising the commercial area ***also*** include some images of storefronts.

In some instances, ICON and its expert also ignored the district court's claim constructions entirely. The court explicitly held that the term "screen display" means "something that is visible" in construing "generating a screen display" as "selecting and arranging images for inclusion in a screen ***visible on the client***."
[A527 (emphasis added)] Yet Dr. Tewfik ignored this requirement, claiming in his declaration that the claims did not require anything to be visible to a user at the client:

> At a server level (i.e., the level addressed by the patent claims), a webpage is computer information or code as opposed to what is derived from such information or code to be seen on a screen or monitor by a user at a remote computer. ***A webpage on a server is not what is seen by a user on a monitor connected to a "client"*** or remote computer. Travelocity's webpage comprises information or code assembled by Travelocity for determining what will be seen by a user on such a remote monitor. A PHOSITA [person having ordinary

skill in the art] would understand ***that images are only selected or arranged on a server as computer information or code representing such images, rather than information that can be viewed***, by a person looking at the server, in the form of pictures, drawings or the like.

[A896-97 (emphasis added)]

And when he reached his final opinions on how each limitation of the claims are found in Travelocity's system, Dr. Tewfik's testimony came up short, consisting only of conclusory statements about Travelocity's web page code. As the district court correctly held, ICON's and Dr. Tewfik's contention that Travelocity's web page code creates material issues of genuine fact exist is unsupported by the record. Dr. Tewfik's declaration merely points to Travelocity's "computer information or code" wholesale, without any analysis of that code:

> This is in line with my report and testimonial opinion that infringement by Travelocity's servers does not require that a remote user actually see particular images on a monitor at a remote or client computer, but that computer information or code representing such images be made available by Travelocity's servers to the client computer.

[A900-01] Dr. Tewfik also concludes that "it would be necessary for Travelocity to modify its computer code so that its servers would not gather or return information or code representing graphics items corresponding to the storefronts [*sic*] images." [A900] But again, he does not provide any evidence or analysis of the accused "code" to support this statement.

Finally, ICON claims it also provided evidence sufficient to raise a genuine

issue of material fact in the form of three screenshots of Travelocity's accused website. The parties do not dispute the contents or compositions of these screenshots:



[A828, A830, A832] For the purposes of summary judgment, Travelocity agreed that these screenshots show images that form the appearance of a "commercial area" and, separately, images of storefronts. [A313-15] But proper construction of the claims requires the latter to be a subset of the former, and that is not the case on Travelocity's accused system. ICON's disagreement with Travelocity stems from its mischaracterization of the claim construction to separate "images arranged into a scene" from the "images having the look of the front exterior of businesses." Dr. Tewfik's approach directly contradicted the district court's claim constructions, highlighting that ICON itself contests the claim constructions—not the application of those claim constructions to the accused system. The issue is thus a matter of

law and appropriate for summary judgment. *Athletic Alternatives, Inc. v. Prince Mfg., Inc.*, 73 F.3d 1573, 1578 (Fed. Cir. 1996). And by ignoring the connection between the two clauses of the relevant limitation, Dr. Tewfik's approach additionally highlights the ultimate problem with ICON's entire case.

**D.    The Claim Construction Issues That ICON Raises Do Not Change the Result in This Appeal.**

**1.    A "Screen Display" Must be Tied to What Will be Shown Visually on a User's Display.**

The ordinary meaning of the word "display" supports the district court's construction of the term "generating a screen display" as "selecting and arranging images for inclusion in a ***screen visible on the client***."  [A527] "Generally, there is a 'heavy presumption' in favor of the ordinary meaning of claim language as understood by one of ordinary skill in the art." *Bell Atlantic Network Servs., Inc. v. Covad Comm. Group, Inc.*, 262 F.3d 1258, 1268 (Fed. Cir. 2001). To redefine a claim term away from its ordinary meaning, the patentee must act as his own lexicographer and "'clearly set forth' or 'clearly redefine' a claim term so as to put one reasonably skilled in the art on notice that the patentee intended to so redefine the claim term." *Id.* "To act as its own lexicographer, a patentee must 'clearly set forth a definition of the disputed claim term' other than its plain and ordinary meaning.'" *Thorner v. Sony Comp. Entertainment Amer., LLC*, 669 F.3d 1362, 1366 (Fed. Cir. 2012). This standard is "exacting." *Id.* In determining a claim

30

term's ordinary meaning, "[d]ictionaries and technical treatises, which are extrinsic evidence, hold a 'special place' and may sometimes be considered along with the intrinsic evidence . . . ." *Bell Atlantic*, 262 F.3d at 1267.

The district court based its conclusion that a "display" implicates something that is visible to a user on the claim language, figures, and written specification. In particular, the claim language itself includes such terms as "display," "graphics items," "appearance," and "reveal"—all terms that suggest visible elements. [A62] Furthermore, Figures 5 through 10 of the patent depict screens that are visible to the client. [A55-57] And Figure 3, which the specification describes as "a flowchart illustrating operation of the system of FIG. 1," includes a step in which "the client recognizes that virtual reality information is being sent [from the server], and launches a virtual reality *viewer* . . . ." [A53, A61 (emphasis added)]

The district court also confirmed that "the inclusion of the requirement that the screen display be visible to the user's computer is consistent with the dictionary definition of 'display.'" [A527] For example, the 1994 McGraw-Hill Dictionary of Scientific and Technical Terms defines "display" as the "*visible* representation of information . . . as on the cathode-ray tube screen of a . . . computer console." [A1779 (emphasis added)] The district court thus reviewed the claim language, specification, figures, and dictionary definitions and found that its construction was consistent with all four.

ICON's proposed construction, however, comports with none of this. ICON's requested construction of "a collection of data or information used in constructing a visual display (i.e., a webpage)" would contradict the plain and ordinary meaning of the claim term because it does not require making anything be actually *visible* in the generated scene that depicts a commercial area. It is also inconsistent with the rest of the claim language, which contains such words as "appearance" and "reveal."   [A62] All of the figures in the patent require something to be generated for *visible* display on the client, yet ICON's proposed construction would do away with that requirement.

Tellingly, the patentee had every opportunity to clearly and unambiguously redefine "screen display" to mean something other than its plain and ordinary meaning, yet the specification does not do so, despite being "the single best guide to the meaning of a disputed term."[7] *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). In fact, the specification consistently contradicts ICON's claim that the "screen display" not be visible: "a navigable virtual reality scene *is presented*" [A61 (8:53-54)];   "a billboard *may show* an advertisement" [A61 (8:66)]; "to *give the appearance* of a movie projected on a building or billboard" [A62 (9:1-3)]; "the user may pick up and *inspect virtual objects*" [A62

---

[7] The patentee was certainly capable of being his own lexicographer, as evidenced by his explicit definitions of "virtual reality scene" and "virtual reality object" in the patent's specification. [A60 (5:45-50)] The patentee provided no such (re)definition of "screen display."

(9:12-13)]; "the *appearance* of the street *presented* will vary" [A62 (9:14-15)]; "*displaying* the user's vantage point of the *panorama*" [A62 (9:44-45)]; "virtual reality objects are formed using *animations*." [A62 (9:59)] A construction that eschews most, if not all, the embodiments in a specification "is rarely, if ever, correct." *Vitronics*, 90 F.3d at 1583.[8]

ICON's proposed construction of "screen display" as something that is not necessarily visible is thus untenable.[9] Though the claims do not have a step requiring the *actual* action of displaying on a client device, they nevertheless require "generating a screen display *for the client*," which includes "graphic items" and which "provides the appearance" of a commercial area with storefronts,

---

[8] The doctrine of claim differentiation does not help ICON here. ICON points to the recitation of "virtual reality" in claim 9 to suggest that claim 1 cannot be limited to virtual reality. But claim 9 adds to claim 1 more features than just virtual reality, and the district court's construction does not limit claim 1 to "virtual reality," especially given that the patent says a "virtual reality scene is a scape in which a user can navigate by looking up, looking down, turning around, zooming in, or zooming out." [*See* Blue Br. at 5]  In short, there is plenty of room between claim 1 and claim 9 under the district court's constructions.

[9] It is curious that ICON centers its argument on a distinction over the non-precedential opinion in *Boss Industries, Inc. v. Yamaha Motor Corp. U.S.A.*, 333 F.Appx'x 531, 541 (Fed. Cir. 2009) (non-precedential).  The district court cited that decision simply for the common sense proposition that its claim construction was supported by both the specification and dictionary definitions—and ICON does not identify that the construction is inconsistent with either the specification or common meaning. [*E.g.*, Blue Br. at 16-17]  ICON concludes, without support, that the description is inconsistent with the description of web browsers and virtual reality viewers in the patent, but both of those items are specifically made to create visible presentations on a client computer, so this assertion by ICON is particularly puzzling.  [See Blue Br. at 19]

and "being navigable to *reveal* graphic items."  The district court correctly construed the claim short of requiring an act of the client computer displaying the scene, because the generated scene is only "*for inclusion* in a screen visible on the client." But its construction properly captures the visible nature of what the claimed invention generates in response to the client's search, while avoiding requiring the act of displaying.

> **2.    The Commercial Area Must be Part of a Scene Because the Claims Call for "Providing the Appearance of at Least Part of a Commercial Area" and "At Least Some of the Graphics Items Having the Appearance of Storefronts."**

The district court correctly construed "graphics items arranged to provide the appearance of at least part of a commercial area, at least some of the graphics items having the appearance of storefronts" as "images arranged into a scene resembling an area having businesses, at least some of the images having the look of the front exterior of a business."  [A533] The claim language contains the word "appearance" twice, supporting the construction of a visible "scene."  Furthermore, every embodiment in the patent's specification includes a "virtual reality scene," which the patent's specification defines as "a space in which a user can navigate by looking up, looking down, turning around, zooming in, or zooming out."  [A60 (5:45-47)] The claim language and specification thus support the court's construction of a "commercial area" as a scene that users could (virtually) explore.

Nonetheless, even under ICON's proposed construction, Travelocity's

34

noninfringement position—and thus the lower court's grant of summary judgment—would remain unchanged. ICON asks this Court to construe "graphics items arranged to provide the appearance of at least part of a commercial area" as "images arranged to provide the depiction of an area having businesses." Once again, ICON ignores the rest of the construed two-clause term and its construction. If this Court replaces the portion of the construction ICON seeks to have vacated with ICON's proposed language, the entire construed term would read "images arranged to provide the depiction of an area having businesses, at least some of the images having the look of the front exterior of a business." This construction would still require the images depicting an area having businesses to include images of storefronts, leaving Travelocity's infringement theory and the district court's summary judgment order intact. Therefore, even if the Court agrees with ICON regarding the construction of the claim limitation, it should still affirm the lower court's judgment.

### 3. "The Screen Display Being Navigable" Requires Generating a Visible Display.

Travelocity first notes that the lower court did not address the term "screen display being navigable to reveal graphics items adjacent those that are displayed" in granting summary judgment; nonetheless, the district court's construction of "screen visible on the client that is able to permit movement through the scene to display additional graphics items near or adjoining other graphics items previously

visible in the scene" was proper. The phrase includes the term "screen display," so, as discussed above, the court was correct to construe it to require a visible element that a user can navigate. Every embodiment in the patent's specification includes a "virtual reality scene," which the patent defines as "a space in which a user can navigate by looking up, looking down, turning around, zooming in, or zooming out." [A60 (5:45-50)] The specification thus supports the court's requirement that the term include "permit[ting] movement through the scene," as every embodiment contemplates allowing a user to look around in the screen display.

Moreover, ICON once again relies on its disagreement with the lower court that a screen display be visible, even though its argument contradicts its earlier attempts to define the term "screen display" as something other than a requirement of something visible. ICON argues for its construction by stating, "*By its very language*, the phrase insists that it is the 'screen display' itself that is capable of 'being navigable' . . . ."  ICON thus recognizes the importance of a claim term's plain and ordinary meaning, yet it insists that this Court ignore that language in construing the terms ICON highlights in its opening brief.  For the very reason ICON argues the Court should vacate the lower court's construction of this term, the Court should uphold the lower court's construction of a screen display as something that is visible, thereby removing any support for ICON's argument regarding this term.

## CONCLUSION

Defendant requests affirmance of the lower court's granting summary judgment of noninfringement of the '853 patent.


Respectfully submitted,


September 12, 2013                    */s/ Thomas Melsheimer*_____

Thomas Melsheimer
Neil McNabnay
David Conrad
Fish & Richardson P.C.
1717 Main Street
Suite 5000
Dallas, TX 75201
Phone: 214-747-5070

John A. Dragseth
Fish & Richardson P.C.
3200 RBC Plaza
60 South Sixth Street
Minneapolis, MN 55402
Phone: 612-337-5070

Counsel for Travelocity.com, LP

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I certify that on September 18, 2013, a courtesy copy of the RESPONSIVE

BRIEF OF DEFENDANT-APPELLEE TRAVELOCITY.COM LP. was served via

electronic mail and ECF filing on the following:

Guy Fisher
Provost Umphrey Law Firm, L.L.P.
490 Park Street
P.O. Box 4905
Beaumont, Texas 77704

Guy E. Matthews
C. Vernon Lawson
Matthew C. Juren
Erik J. Osterrieder
Matthews Lawson PLLC
2000 Bering Drive, Suite 700
Houston, Texas 77057

*Attorneys for Plaintiff-Appellant ICON
Internet Competence Network, B.V.*

*/s/ Thomas Melsheimer*_____
Thomas Melsheimer
Fish & Richardson, P.C.
Counsel for Travelocity.com LP

## <u>CERTIFICATE OF COMPLIANCE</u>

The Brief for Appellee complies with the type-volume limitation set forth in FRAP 32(a)(7)(B). The relevant portions of the Brief, including all footnotes, contain 8,812 words, as determined by Microsoft Word® 2010.

September 12, 2013

_/s/ Thomas Melsheimer_
Thomas Melsheimer
Neil McNabnay
David Conrad
Fish & Richardson P.C.
1717 Main Street
Suite 5000
Dallas, TX 75201
Phone: 214-747-5070

John A. Dragseth
Fish & Richardson P.C.
3200 RBC Plaza
60 South Sixth Street
Minneapolis, MN 55402
Phone: 612-337-5070

Counsel for Travelocity.com LP